IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Frederick L. Allman, on his own behalf
and on behalf of all similarly situated persons,

    Plaintiff,

v.

Allstate Northbrook Indemnity Company,
Allstate Fire and Casualty Insurance Company
and Allstate Indemnity Company,

    Defendant.

---

### CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
### Jury Trial Demanded

---

Plaintiff Frederick Allman, on his own behalf and on behalf of all others similarly situated, brings this Class Action Complaint against the Allstate Northbrook Indemnity Company, Allstate Fire and Casualty Insurance Company and Allstate Indemnity Company, and asserts to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

#### NATURE OF THE ACTION

1.    Plaintiff Frederick Allman brings this class action against defendants Allstate Northbrook Indemnity Company, Allstate Fire and Casualty Insurance Company and Allstate Indemnity Company for surveillance of insureds and invasion of their privacy by collecting data on their insureds' location and driving habits, surreptitiously, and without consent.

1

2. Defendants Allstate Northbrook Indemnity Company, Allstate Fire and Casualty Insurance Company and Allstate Indemnity Company secretly collect and sell consumers' driving behavior data from mobile devices, in-car devices, and vehicles. Defendants used the illicitly obtained data to build the world's largest driving behavior database, housing the driving behavior of more than 45 million Americans. Defendants created the database for two principal purposes: (1) to support defendants' car insurance business, including relative to under-writing and coverage decisions, and (2) profit from selling the driving behavior data to third parties, including other car insurance carriers.

3. Through software integrated into the third-party apps, defendants directly pull valuable data directly from consumers' mobile phones. The data included a phone's geolocation data, accelerometer data, magnetometer data, and gyroscopic data, which monitors details such as the phone's altitude, longitude, latitude, bearing, GPS time, speed, and accuracy. These apps currently allow defendants to capture data every 15 seconds or less from 40 million active mobile connections.

4. Once collected, defendants monetize the driving data, including selling access to the driving data to other insurers and using the data for insurance underwriting and coverage decisions. If a consumer requested a car insurance quote or had to renew their coverage, defendants access that consumer's driving behavior in its database. Insurers then secretly used that consumer's data to justify increasing their car insurance premiums, denying them coverage, or dropping them from coverage.

5. Consumers, including class members, did not consent to, nor were aware of defendants' collection and sale of driving data. Defendants did not inform consumers

2

about their extensive data collection, nor did defendants obtain consumers' consent to engage in such data collection. Defendants did not inform consumers as to how they would analyze, use, and monetize their sensitive data.

6. The putative class is comprised of defendants' insureds who were not informed about, nor consented to, defendants' continuous collection and sale of their driving data. Through this action, plaintiff and class members seek damages for the losses suffered because of defendants' misconduct, as well as injunctive relief aimed at preventing defendants from engaging in such practices in the future.

## PARTIES

7. Plaintiff Frederick Allman lives in and is a full-time citizen of Colorado, within this judicial district. Allman owns an automobile insurance policy that was originally underwritten and administered by Allstate Indemnity Company; its policy number is 000820529774. Allman also owns a renters insurance policy that was originally underwritten and administered by Allstate Indemnity Company; its policy number is 000820529774. In January 2025, Allman filed a $3,818.77 claim after some personal property was stolen from his car while his car was at a body shop for repairs. Allman was told that the claim was going to be denied due to information that has come in from DriveWise, which is the name of one of defendants' embedded apps described below.

8. Defendant Allstate Fire and Casualty Insurance Company is a foreign corporation with a principal corporate address at 3100 Sanders Road, Suite 201, Northbrook, Illlinois, 60602. In Colorado, its registered agent for service of process is CT Corporation System, 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado, 80112.

9. Defendant Allstate Northbrook Indemnity Company is a foreign corporation with a principal corporate address of 3100 Sanders Road, Suite 201, Northbrook, Illinois 60602. In Colorado, its registered agent for service of process is CT Corporation System, 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado, 80012.

10. Plaintiff's original insurance contracts were between him and defendant Allstate Indemnity Company. According to Colorado records, Allstate Indemnity Company is delinquent and has changed names. The two named defendants share the same address as the apparently dissolved Allstate Indemnity Company.

11. In this Complaint, defendants refers to all named defendants and all predecessor, successor, parent, subsidiary and related entities to which these allegations pertain.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed $5 million, exclusive of interest and costs, and all conditions are met. In particular, plaintiff, and a large number of class members, are citizens of states different from the defendants.

13. This Court has jurisdiction over defendants as they conduct a substantial amount of business within this judicial district.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the District.

## GENERAL FACTUAL BACKGROUND

15. Defendants amassed driving data from millions of daily trips and from millions of active geographically dispersed consumer connections. Defendants obtained the data without consumers' knowing by integrating software into various mobile apps that enabled it to collect data directly from consumers' phones.

16. Defendants monetized class members' driving data in a variety of ways, including by building the world's largest driving behavior database, and selling access to it to other insurers.

17. Defendants did not notify plaintiff and class members, nor obtained their consent, to collect or sell their driving data.

18. The defendants' app harvests, among other things:

    a. a mobile phone's geolocation data, accelerometer data, magnetometer data, and gyroscopic data;

    b. "Trip attributes," which included information about a consumer's movements, such as start and end location, distance, duration, start and end time, and termination reason code;

    c. "GPS points," such as the accuracy, position, longitude, latitude, heading, speed, GPS time, time received, bearing, and altitude of a consumer's mobile phone;

    d. "Derived events," such as acceleration, speeding, distracted driving, crash detection, and attributes such as start and end location, start and end time, speed attribute, rate of change attribute, and signal strength attribute; and

    e. Metadata, such as ad ID, country code, iOS vs. Android indicator, User ID, device type, app version, and OS version.

19. Defendants license the app by paying app developers millions of dollars to integrate it into their respective mobile apps. On information and belief, to avoid alerting

5

consumers of their data collection, defendants only sought to partner with apps that, before contracting with defendants, already contained features that relied on location information to function properly.

20. Pursuant to their agreements with the app developers, defendants owned any driving data they collected from an app user and were permitted to use the driving data for their own independent purposes.

21. Defendants used class members' driving data and personal data, alone and in conjunction with one another, to develop, advertise, and sell several different products and services to third parties, and used the driving data and personal data for its own underwriting purposes.

22. The data defendants collected was unavoidably suspect. For example, if a person was a passenger in a bus, a taxi, or in a friend's car, and that vehicle's driver sped, hard braked, or made a sharp turn, defendants would conclude that the passenger, not the actual driver, engaged in "bad" driving behavior based on the driving data. Defendants would then subsequently sell and share the data so it could be used to inform decisions about that passenger's insurability based on their "bad" driving behavior. In a further example of defendants' abusive practices in connection with driving data, a person's driving score was lowered because the "driving" behavior data collected from his phone claimed he was driving, when he was actually riding a roller coaster.

**CLASS ACTION ALLEGATIONS**

23. Plaintiff seeks relief in his individual capacity and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), (b)(3), and

(c)(4), Plaintiff seeks certification of the following class:

*All persons residing in Colorado whose driving information was collected, distributed, stored, and/or sold by defendants.*

24. *Numerosity. Fed. R. Civ. P. 23(a)(1).* The members of the class are so numerous that the joinder of all members is impracticable. While the exact number of class members is unknown to plaintiff at this time, defendants' practice affects thousands of drivers. All members of the proposed class are readily ascertainable.

In the driving and personal data collected by defendants, defendants have access to the addresses and other contact information from which class members can be identified.

25. **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members. These common questions of law and fact include, without limitation:

  **a.** Whether defendants collected plaintiff's and class members' driving data;

  **b.** Whether plaintiff and class members consented to such collection;

  **c.** Whether defendants' conduct was knowing and willful;

  **d.** Whether defendants' conduct violates the Federal Wiretap Act;

  **e.** Whether defendants' conduct violates the Computer Fraud and Abuse Act;

  **f.** Whether defendants were unjustly enriched by their sale of the plaintiff's and class's driving data;

  **g.** Whether defendants' conduct gives rise to statutory and actual damages, and the amount of such damages.

26. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of those of the class in that all were subject to the same data collection, use, and sharing practices of defendants.

27. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the class. Plaintiff's counsel are competent and experienced in litigating class actions and complex commercial litigation.

28. **Superiority of Class Action. Fed. R. Civ. P. 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

29. Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Colorado class.

**COUNT I – VIOLATION OF THE FEDERAL WIRETAP ACT,**
**18 U.S.C. §§2510,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

30. Plaintiff repeats and fully incorporates all factual allegations contained in paragraphs 1 through 29.

31. The Federal Wiretap Act ("FWA"), as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication.

32. In relevant part, the FWA prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring "any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

33. The FWA also makes it unlawful for any person to intentionally disclose, or endeavor to disclose, to any other person or to intentionally use, or endeavor to use, the "contents of any wire, oral, or electronic communication, knowing or having reason to know that" the communication was obtained in violation of the FWA. 18 U.S.C. §§ 2511(1)(c) & (d).

34. The FWA provides a private right of action to any person whose wire, oral, or electronic communication is intercepted, used, or disclosed. 18 U.S.C. § 2520(a).

35. The FWA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

36. The FWA defines "electronic communication" as "any transfer of signs, signals, […] data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

37. The FWA defines "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." 18 U.S.C. § 2510(5).

38. The FWA defines "contents," with respect to any covered communication, to include "any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. § 2510(8).

39. The FWA defines "person" to include "any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6).

40. Defendants are persons as defined in 18 U.S.C. §2510(6).

41. The data and transmissions within, to, and from plaintiff's and class members' mobile devices constitute "electronic communications," as defined by 18 U.S.C. § 2510(12), as they are transfers of signals, data, and intelligence transmitted by electromagnetic, photoelectronic or photooptical systems that affect interstate commerce.

42. As described in this Complaint, defendants intercepted, in real time and as it was transmitted, the contents of electronic communications transmitted within, to, and from plaintiff's mobile devices and third party apps, and diverted those communications to themselves without consent.

43. As described in this Complaint, the electronic communications detailed above that defendants intercept are tied to individual drivers and vehicles, and not anonymized.

44. Plaintiff and class members have a reasonable expectation of privacy within their vehicles, and plaintiff and class members reasonably expected privacy while driving

their vehicles and using their mobile devices.

45. Common understanding and experience of how mobile apps work create a reasonable expectation that an insurer and its affiliates, such as defendants, would not surreptitiously intercept and divert the detailed and personal electronic communications described above.

46. In further violation of the FWA, defendants intentionally used or endeavored to use the contents of the electronic communications described above knowing or having reason to know that the information was obtained through interception in violation of 18 U.S.C. § 2511(1)(a). 18 U.S.C. § 2511(1)(d).

47. Specifically, defendants used the improperly obtained information to price insurance products sold to plaintiff and class members, and sold this information to other insurers.

48. As a result, plaintiff and class members have suffered harm and injury due to the interception, disclosure, and/or use of electronic communications containing their private and personal information.

49. Pursuant to 18 U.S.C. § 2520, plaintiff and class members have been damaged by defendants' interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by plaintiff and the class and any profits made by defendant as a result of the violation or (b) statutory damages for each class member of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable

attorneys' fees and other litigation costs reasonably incurred.

### COUNT II – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§1030, *et seq.* (On Behalf of Plaintiff and the Class)

50. Plaintiff repeats and fully incorporates all factual allegations contained in paragraphs 1 through 29.

51. The Computer Fraud and Abuse Act ("CFAA"), enacted in 1986 as part of the ECPA, prohibits the intentional accessing, without authorization or in excess of authorization, of a computer under certain circumstances. 18 U.S.C. § 1030(a).

52. The CFAA specifically provides that it is unlawful to "intentionally access a computer without authorization or exceed[] authorized access, and thereby obtain[]…information from any protected computer." 18 U.S.C. § 1030(a)(2)(c).

53. Plaintiff and class members, as individuals, and defendants, as corporations, are "persons" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(12).

54. A "computer" is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(10).

55. Plaintiff's and class members' cellphones are data-processing devices performing logical, arithmetic, and storage functions and thus constitute a "computer" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(1).

56. "Exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain." 18 U.S.C. § 1030(e)(6).

57. A "protected computer" is defined as "a computer . . . which is used in or affecting interstate or foreign commerce or communication…, [or that] has moved in or otherwise affects interstate or foreign commerce." 18 U.S.C. § 1030(e)(2)(B). They are used to send and receive information and electronic communications across state lines and internationally. Thus, they constitute "protected computers" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(2)(B).

58. Through the embedded third party apps, defendants intentionally accessed plaintiff's and class members' cellphones without plaintiff's or class members' authorization, or in a manner that exceeded plaintiff's and class members' authorization, and obtained information therefrom in violation of the CFAA. 18 U.S.C. § 1030(a)(2)(C).

59. Plaintiff and class members have suffered harm and injury due to defendants' unauthorized access to the communications containing their private and personal information as well as defendants' sale of such information to other insurers.

60. A civil action for violation of the CFAA is proper if the conduct involves "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." Because the loss to plaintiff and class members during any one year period within the relevant timeframe, including the loss of their privacy interest in and control over their driving and personal data, exceeded $5,000 in aggregate, plaintiff and the class are entitled to bring this civil action and are entitled to economic damages, compensatory

damages, injunctive, equitable, and all available statutory relief, as well as their reasonable attorney's fees and costs and other relief as permitted by the CFAA. 18 U.S.C. § 1030(g).

## COUNT III – INVASION OF PRIVACY
### (On Behalf Of Plaintiff and the Class)

61. Plaintiff repeats and fully incorporates all factual allegations contained in paragraphs 1 through 29.

62. Plaintiff and the class had a legitimate expectation of privacy regarding their driving and personal information that were recorded in the Allstate apps and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

63. Defendants owed a duty to plaintiff and the class to keep this driving and personal information confidential.

64. Defendants affirmatively and recklessly disclosed this driving and personal information to unauthorized third parties.

65. The unauthorized disclosure by a third party of plaintiff's and the class's driving and driving information is highly offensive to a reasonable person.

66. Defendants' reckless and negligent failure to protect plaintiff's and the class's driving information constitutes an intentional interference with plaintiff's and the class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

67. In failing to protect plaintiff's and the class's driving and personal information, defendants acted with a knowing state of mind when it permitted the

disclosure.

68. Defendants had notice and knew that its sale of the driving and personal information would cause injury to plaintiff and the class.

69. Plaintiff and the class seek injunctive relief to enjoin defendants from further intruding into the privacy and confidentiality of their driving and personal information.

### COUNT IV – NEGLIGENCE
### (On Behalf Of Plaintiff and the Class)

70. Plaintiff repeats and fully incorporates all factual allegations contained in paragraphs 1 through 29.

71. Defendants solicited, gathered and stored personal information of plaintiff and the class as part of its business operation.

72. Upon accepting and storing this personal information, defendants undertook and owed a duty to plaintiff and the class to exercise reasonable care to secure and safeguard that information.

73. Defendants owed plaintiff and the class a common law duty to use reasonable care to avoid causing foreseeable risk of harm to plaintiff and the class when obtaining and managing driving and personal information.

74. Defendants' use of and sale of this driving and personal information breached this common law duty, causing foreseeable damage.

75. Plaintiff and the class seek injunctive relief to enjoin defendants from further intruding into the privacy and confidentiality of their driving and personal

information.

## COUNT V – UNJUST ENRICHMENT
**(On Behalf Of Plaintiff and the Class)**

76. Plaintiff repeats and fully incorporates all factual allegations contained in paragraphs 1 through 29.

77. Plaintiff and the class conferred a monetary benefit on defendants by unknowingly providing to it their valuable driving and personal information, which defendants monetized by selling to third parties.

78. Defendants acquired this monetary benefit through inequitable means in that it failed to disclose its collection and sale of the driving and personal information.

79. Under the principles of equity and good conscience, defendants should not be permitted to retain the money it received by selling plaintiff's and the class's driving and personal information.

80. Defendants should be required to disgorge into a common fund or constructive trust the proceeds that it unjustly received.

### REQUEST FOR RELIEF

**WHEREFORE**, plaintiff, individually and on behalf of all class members proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against defendants as follows:

- For an Order certifying the Class as defined, and appointing Plaintiff as class representative and his counsel as class counsel;

- For permanent injunctive relief to prohibit defendants from continuing to engage in the unlawful acts, omissions, and practices;

- For an award of actual damages and compensatory damages, in an amount to be determined;

- For an injunction requiring defendants to cease the collection and sale practices described in this Complaint;

- For an Order disgorging the proceeds defendants collected in selling the driving and personal information and depositing the proceeds into a constructive trust or common fund;

- For an award of pre-judgment and post-judgment interest as allowed by law;

- For an award of costs of suit and attorneys' fees, as allowable by law; and

- Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED: April 15, 2025.

Respectfully submitted;

By: /s/ Eric Ballou
Eric Ballou, #40163
THE FRICKEY LAW FIRM, P.C.
940 Wadsworth Boulevard
Suite 400
Lakewood, Colorado 80214
Tel.: 303.237.7373
Fax: 303.233.7313
Email: eballou@frickey.com

By: /s/ Jordon M. Lewis
Jordan M. Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, Florida 33334
Tel.: 954.616.8995
Fax: 954.206.0374
Email: jordan@jml-lawfirm.com

*Attorneys for Plaintiff and Putative Class*